IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROCKWELL ROWE, JR. and MICHELLE ROWE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SKYWAY CONCESSION COMPANY LLC, and CALUMET CONCESSION PARTNERS INC.,<br><br>Defendants. | Case No. 24-cv-06313<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Rockwell Rowe, Jr. and Michelle Rowe have brought a putative class action against Defendants Skyway Concession Company LLC ("SCC") and Calumet Concession Partners Inc ("CCPI") for breach of contract, violations of the Illinois Consumer Fraud Act 815 ILCS 505/1 *et seq.* ("ICFA"), and unjust enrichment. Before the Court now is Defendants' motion to dismiss [23] [24] the Second Amended Complaint.[1] For the reasons stated herein, Defendants' Motion to Dismiss is granted.

**I. Background**

---

[1] After Defendants briefed their motion to dismiss Plaintiffs' First Amended Complaint [21], Plaintiffs filed a Second Amended Complaint [46] which is identical to the prior complaint except that it removed allegations against two other Defendants. *See* [41]. During a status hearing held on March 6, 2025, the parties agreed that Defendants' motion to dismiss and briefing would remain applicable to the Second Amended Complaint.

1

The following factual allegations taken from the operative complaint [46] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

In January 2005, the City of Chicago ("the City") transferred control of the Chicago Skyway to SCC under the Chicago Skyway Concession and Lease Agreement (the "CLA").[2] [46] ¶ 11. Under the terms of the agreement, the City granted SCC the right to set tolls and collect all toll revenue from the Skyway. [46] ¶¶ 19-20. The CLA does not require that the City affirmatively consent to or approve any increase in tolls, but Schedule 6, Section 3 of the agreement limits the amounts by which Defendants may increase tolls in a given year. [46] ¶¶ 20-21. Beginning in 2018, the amount that SCC may increase any tolls is limited by various macroeconomic indicators set forth in the CLA. [46] ¶ 30 Under the CLA, the City reserves the right "determine whether or not [SCC] is in compliance with its obligations under [the CLA]." [24-1] § 3.7(a).

The CLA provides that it "shall inure to the benefit of the Parties." [24-1] § 20.11. It further contains a section entitled "No Partnership or Third Party Beneficiaries," which provides that "[e]xcept as expressly provided herein to the contrary . . . nothing contained in this Agreement . . . [shall] be construed in any way to grant, convey or create any rights or interests in any Person not a Party to this Agreement." [24-1] § 20.12.

---

[2] Because the CLA is "referred to in the [P]laintiff[s'] complaint and central to [their] claim," the Court can properly consider the CLA in deciding this motion to dismiss. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

Plaintiffs allege that beginning in 2018, Defendants began charging more for certain tolls than the CLA allowed. [46] ¶¶ 40-43. Defendants also charge an additional $0.03 surcharge above the maximum toll levels for drivers who use the electronic tolling E-ZPass system. [46] ¶ 44. Due to a "processing error," Defendants have double-billed at lease some drivers for this surcharge. [46] ¶¶ 36, 49. After Defendants were contacted by a news outlet about the double-billing in 2022, Defendants refunded at least some of the affected drivers. *See* [46] ¶ 49.

**II.     Standard**

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to

3

be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### III. Analysis

#### A. Overview

Plaintiffs bring four counts against Defendants: Count I alleges that SCC violated the ICFA by engaging in deceptive acts, Count II alleges that SCC and CCPI violated the ICFA by engaging in unfair acts, Count III is a breach of contract claim against SCC, and Count IV is an unjust enrichment claim against SCC and CCPI. Each claim is premised either on Defendants charging tolls beyond what the CLA permitted, double-charging drivers for E-ZPass fees, or both.

For the purposes of their motion to dismiss, Defendants accept (as they must) that they charged tolls beyond what the CLA authorized and double-charged E-ZPass fees. They nonetheless argue that Plaintiffs fail to state a claim as to each count. For the reasons discussed below, the Court agrees. Because Defendants' arguments regarding Plaintiffs' breach of contract claim are relevant to the remaining claims, the Court begins its analysis with Count III.

### B. Count III – Breach of Contract

Defendants argue that Plaintiffs have no right to enforce any contractual provisions in the CLA because Plaintiffs are not parties to the CLA. The Court agrees.

Under Illinois law,[3] "only a party to a contract, or one in privity with a party, may enforce a contract, except that a third party beneficiary may sue for breach of a contract made for his benefit." *Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1206 (N.D. Ill. 2015) (citing *Wilde v. First Fed. Sav. & Loan Ass'n of Wilmette*, 480 N.E.2d 1236, 1242 (1985)). "It must appear from the relevant language that the contract provision at issue was made for the direct, not merely incidental, benefit of the third party." *Cohn*, 130 F. Supp. 3d at 1206 (citing *Gallagher Corp. v. Russ*, 721 N.E.2d 605, 612 (Ill. App. Ct. 1999)). Liability to a third party must "affirmatively appear from the contract's language and from the circumstances surrounding the parties at the time of its execution, and cannot be expanded or enlarged simply because the situation and circumstances justify or demand further or other liability." *Ball Corp. v. Bohlin Bldg. Corp.*, 543 N.E.2d 106, 107 (Ill. App. Ct. 1989). The contractual language granting a third-party enforcement rights "must be so strong as to be practically an express declaration." *Id*.

Plaintiffs are not parties to the CLA and the CLA expressly provides that it does not provide benefits to any non-parties to the agreement. [24-1] § 20.12. Plaintiffs thus fall far short of identifying "an express declaration" that they have any rights to enforce the contract, as they are required to do. *Ball Corp.*, 543 N.E.2d at 107.

---

[3] The CLA is governed by Illinois law. [24-1] § 20.6.

Plaintiffs acknowledge that they are not parties to the CLA but argue that Skyway users are direct beneficiaries of Schedule 6's restrictions on toll increases, and that the presumption against providing enforcement rights to nonparties thus does not apply. In support, Plaintiffs principally rely on *Barba*, where an Illinois appellate court considered whether a third-party firefighter could sue to enforce a contract between two governmental entities. *Barba v. Vill. of Bensenville*, 29 N.E.3d 1187, 1190 (Ill. App. Ct. 2015). The court held that the firefighter could sue to enforce the contract despite that the contract contained a general provision stating that it did not provide any benefits to third parties. *Id*. at 1194-95. In so holding, the court noted that the plaintiff had participated in negotiating the contract and that the contract identified various specific benefits that he—and he alone—was entitled to receive. *Id*. at 1195. The court reasoned that "the more specific provision related to [plaintiff's] benefits govern over the more general [no third party benefits provision], rendering the latter inoperative at least against [the plaintiff]." *Id*.

Here, conversely, no members of putative class participated in drafting the CLA, and Plaintiffs have not identified any provision of the CLA that provide rights or specific benefits to putative class members. Rather, Schedule 6 identifies the "*the Concessionaire's rights*" to establish tolls subject to certain limits, and Section 3.1 identifies "*the right of the City*" to monitor SCC's compliance with the CLA. That Skyway users may indirectly benefit from SCC's compliance—or indeed be indirectly harmed by SCC's non-compliance—does not give them the right to enforce the contract. "Even the fact that the contracting parties may have known, expected, or

6

even intended that others would indirectly benefit from their agreement is not enough to overcome the presumption that the contract was intended only to directly benefit the contracting parties." *Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, No. 17 C 06588, 2018 WL 2100740, at *5 (N.D. Ill. May 7, 2018) (citing *James v. SCR Medical Transportation, Inc.*, 61 N.E.3d 1043, 1052 (Ill. App. Ct. 2016)).

Because Plaintiffs are neither a party nor a third-party beneficiary to the CLA, their breach of contract claim is dismissed with prejudice.

### C. Counts I and II – ICFA Claims[4]

In Count I, Plaintiffs allege that Defendants committed deceptive acts or practices in violation of the ICFA. In Count II, they allege that Defendants committed unfair acts or practices in violation of the ICFA. To state a claim under the ICFA, plaintiffs must allege (1) a deceptive or unfair act or promise by Defendants, (2) Defendants' intent that Plaintiffs rely on the deceptive or unfair act, (3) that the deceptive or unfair act occurred during a course of conduct involving trade or commerce, and (4) actual damage as a result of the deceptive or unfair act. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014).

#### i. Distinctions from Plaintiffs' Breach of Contract Claim

As an initial matter, Defendants argue that Plaintiffs' ICFA claims should be dismissed because they are based on the same conduct that underlies Plaintiffs'

---

[4] The parties dispute whether the Plaintiffs' ICFA claims should be evaluated under Rule 8 or under Rule 9(b), which applies to fraud claims. The Seventh Circuit has held that ICFA claims should be evaluated under Rule 9(b)'s heightened standard when those claims "sound in fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). The Court declines to determine whether Plaintiffs' allegations sound in fraud because, as discussed *infra*, they fail to satisfy even Rule 8's more lenient standard.

7

breach of contract claim. As Defendants point out, a "breach of a contractual promise, without more, is not actionable under [ICFA]," and ICFA claims should be properly dismissed for "failure to allege any unfair or deceptive conduct distinct from the alleged breach of a contractual promise." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011). Courts applying Illinois law regularly dismiss ICFA claims when they are simply repackaged breach of contract claims. *See, e.g., Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005) (holding that an insurer's failure to fulfill its policy obligations amounted only to a breach of contract claim rather than an ICFA violation); *Golembiewski v. Hallberg Ins. Agency, Inc.*, 635 N.E.2d 452, 460 (Ill. App. Ct. 1994) (reversing jury verdict on ICFA claim where the plaintiff "merely presented evidence to support a breach of contract claim and then sought the same or additional relief under the" ICFA).

But in each of these cases, the plaintiff's ICFA claim was based on unfair or deceptive conduct indistinct from a breach of contract where the plaintiff was a party to the breached contract. Those cases do not speak to the circumstances before the Court now, where Plaintiffs' ICFA claim is premised on a breach of contract in which Plaintiffs have no rights. In explaining the rule that a breach of contract cannot give rise to an ICFA claim, Illinois courts have said that if the ICFA *did* apply to "simple breach of contract claims," those claims "would be supplemented in every case with an additional and redundant remedy." *Golembiewski* 635 N.E.2d at 460 (citing *Exchange National Bank v. Farm Bureau Life Insurance Co.*, 438 N.E.2d 1247, 1250 (Ill. App. Ct. 1982)). Illinois courts have further explained that "[e]very individual

8

breach of contract between two parties does not amount to a cause of action cognizable under the [ICFA]" because the ICFA "is intended to reach practices of the type which affect consumers generally and is not available as an additional remedy to address a purely private wrong." *Bankier v. First Federal Sav. & Loan Ass'n of Champaign*, 588 N.E.2d 391, 398 (Ill. App. Ct. 1992).

Here, there is no risk that the ICFA claim will be redundant to any breach of contract claim because Plaintiffs have no rights in the relevant contract. As a result, the general rule that an ICFA claim cannot be premised on a breach of contract does not apply in this case. However, for the reasons discussed below, Plaintiffs have nonetheless failed to state a claim for any ICFA violations.

### ii. Deceptive Acts

A "deceptive act" that is prohibited by the ICFA is one that "conceal[s], suppress[es], or omi[ts] . . . a material fact." 815 ILCS 505/2. "[M]ateriality is tested with the reasonable person standard." *Kitzes v. Home Depot USA*, 872 N.E.2d 53, 60 (Ill. App. Ct. 2007).

Plaintiffs have failed to allege an actionable deceptive act. Even taking as true that Defendants charged tolls unauthorized by the CLA, Plaintiffs nowhere allege that Defendants charged any toll greater than what Defendants posted or otherwise communicated to the public the toll prices would be. Members of the putative class paid the tolls that Defendant communicated they would charge; they thus cannot claim to have been deceived about the toll rates.

Plaintiffs argue that posting the unauthorized tolls was itself a deceptive act because it misled consumers into believing that Defendants *were* authorized to charge the posted amounts. But as Plaintiffs acknowledge, the CLA—and Schedule 6's limitations on toll increases—are public. [46] ¶ 2 n.1. Even assuming the macroeconomically-derived toll increase-limits contained in the CLA are material to a "reasonable person," Plaintiffs allege no facts sufficient to support an inference that Defendants concealed, suppressed, or omitted the existence of those limits.

The cases that Plaintiffs cite in support are inapposite. For example, in *Kahn*, the Seventh Circuit held that a plaintiff successfully stated a claim for deceptive acts under the ICFA against Walmart where Walmart advertised items on its shelves at a lower price than what they charged customers at the register. *Kahn v. Walmart Inc.*, 107 F.4th 585, 604 (7th Cir. 2024). That is unlike the alleged conduct here: Defendants advertised the cost to drive on the Skyway, and armed with that knowledge, Plaintiffs paid the advertised price to drive on the Skyway.

Plaintiffs' allegations regarding double-billed E-ZPass surcharges similarly fail to establish any deceptive act. Plaintiffs allege that that the error occurred because of a "processing error." [22] ¶ 49. Plaintiffs do not allege that that the charges occurred as a result of any deception. The allegations are thus insufficient to state a claim, and Count I is dismissed.

### iii. Unfair Acts

Plaintiffs similarly fail to allege any unfair practices that violate the ICFA. To be unfair under the ICFA, an act must (1) violate "public policy," (2) be "immoral,

10

unethical, oppressive or unscrupulous" so that the consumer "has little choice but to submit," and (3) cause legally cognizable "substantial injury to consumers" that they could not reasonably have avoided. *Horist v. Sudler & Co.*, 941 F.3d 274, 280 (7th Cir. 2019); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). Plaintiffs' allegations regarding unauthorized toll increases fail to state a claim because "[t]here is nothing immoral, oppressive, unscrupulous or unethical about charging a consumer a price she is willing to pay." *Flores v. United Airlines*, 426 F. Supp. 3d 520, 531 (N.D. Ill. 2019). *See also Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) ("[C]harging an unconscionably high price generally is insufficient to establish a claim for unfairness.").[5] Rather, to violate the ICFA, Plaintiffs must allege that the high prices also violate some public policy. *Id*. They have failed to do so here.

Plaintiffs purport to identify two public policies that were violated in their complaint. First, they allege that the charges violate 815 ILCS 510/2(a)(11), which concerns misleading statements regarding price reductions. [22] ¶ 84. But the underlying alleged misconduct has nothing to do with price reductions and Plaintiffs have thus failed to allege in more than conclusory fashion that this policy was violated. Second, Plaintiffs point generically to a "well-established public policy that parties uphold their [contractual] obligations," [22] ¶ 83, but they cite no law or statute demonstrating that Illinois has ever recognized such a policy exists for the purposes of an ICFA claim. This is unsurprising, given Illinois courts' repeated and

---

[5] Plaintiffs filed a motion to amend [40] their response brief to attach an exhibit demonstrating that Skyway use is a price inelastic good, demonstrating that Skyway users have no choice but to submit to unauthorized tolls. Because Plaintiffs' unfairness claim fails for other reasons, their motion to amend is denied as moot.

11

clear rule that individuals have no right to enforce a contract to which they are not a party. Accepting the existence of Plaintiffs' claimed policy would turn that rule on its head.

And Plaintiffs' allegations regarding double-billed E-ZPass surcharges likewise fail because it is not immoral, oppressive, unethical, or unscrupulous to mistakenly charge a fee. *See Stern v. Norwest Mortgage, Inc.*, 688 N.E.2d 99, 104 (Ill. 1997) (no ICFA liability where defendant "made an honest mistake" and charged an unauthorized fee). Plaintiffs' double-billing allegations do not support an inference that the charges were the result of anything more than an honest mistake, and they thus cannot support an ICFA claim for unfair conduct. Count II is thus dismissed.

### D. Counts IV – Unjust Enrichment

Under Illinois law, "[u]njust enrichment is not an independent cause of action. Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law." *Flores v. Aon Corp.*, 242 N.E.3d 340, 356 (Ill. App. Ct. 2023). The Seventh Circuit has held that when "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Here, Plaintiffs allege that Defendants were unjustly enriched by the same conduct underlying Counts I and II. Because those claims are dismissed, so too is Count IV.

### IV.   Conclusion[6]

---

[6] Defendants argue that all claims should be dismissed against CCPI because the amended complaint does not allege that CCPI committed any specific misconduct. Plaintiffs respond that the nature and

12

For the stated reasons, Defendants' Motion to Dismiss [23] [24] is granted. Count III is dismissed with prejudice. Counts I, II, and IV are dismissed without prejudice. Civil case terminated.

E N T E R:

Dated: June 23, 2025

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

---

circumstances of the alleged wrongdoing don't allow them to know which Defendant is specifically responsible for any wrongdoing. Because all claims have been dismissed against all Defendants, the Court declines to resolve this dispute.