**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROCKWELL ROWE, JR. and MICHELLE ROWE, on behalf of themselves and all others similarly situated, | Case No. 24-cv-06313 |
| Plaintiffs, | Judge Mary M. Rowland |
| v. | |
| SKYWAY CONCESSION COMPANY LLC, and CALUMET CONCESSION PARTNERS INC., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Rockwell Rowe, Jr. and Michelle Rowe have brought a putative class action against Defendants Skyway Concession Company LLC ("SCC") and Calumet Concession Partners Inc ("CCPI") for violations of the Illinois Consumer Fraud Act 815 ILCS 505/1 *et seq*. ("ICFA") and for unjust enrichment. Before the Court now is Defendants' motion to dismiss [59] the Third Amended Complaint ("TAC"). For the reasons stated herein, Defendants' Motion to Dismiss is granted.

## I.  Background

### A.  Factual Background

Unless otherwise indicated, the following factual allegations taken from the TAC [67] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

1

The Chicago Skyway Bridge (the "Skyway") is a 7.8 mile toll road built in 1958 to connect the Dan Ryan Expressway to the Indiana Toll Road. TAC ¶ 6. In January 2005, the City of Chicago ("the City") transferred control of the Chicago Skyway to SCC under the Chicago Skyway Concession and Lease Agreement (the "CLA").[1] TAC ¶¶ 5-6. Defendant CCPI owns Defendant SCC. *See* TAC ¶ 30.

Under the terms of the CLA, the City granted SCC the right to set tolls and collect all toll revenue from the Skyway. TAC ¶ 37. The CLA does not require that the City affirmatively consent to or approve any increase in tolls, but Schedule 6, Section 3 of the agreement limits the amounts by which Defendants may increase tolls in a given year. *See* TAC ¶ 38. Beginning in 2018, the amount that SCC may increase any tolls is limited by various macroeconomic indicators set forth in the CLA. TAC ¶ 41 Under the CLA, the City reserves the right "determine whether or not [SCC] is in compliance with its obligations under [the CLA]." [24-1] § 3.7(a). Plaintiffs allege that beginning in 2018, SCC began charging more for certain tolls than the CLA allowed. *See* TAC ¶¶ 56-69.

### A. Procedural Background

Plaintiffs filed the first complaint in this action on June 18, 2024, and Defendants timely removed the case to federal court on July 24, 2024. [1]. After Defendants moved to dismiss the complaint, Plaintiffs filed their first amended complaint, which Defendants moved to dismiss on November 27, 2024. [23, 24]. The first amended

---

[1] Because the CLA is "referred to in the [P]laintiff[s'] complaint and central to [their] claim," the Court can properly consider the CLA in deciding this motion to dismiss. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

2

complaint contained claims for breach of contract, unjust enrichment, and ICFA violations premised on deceptive and unfair acts. [22].[2] On June 23, 2025, the Court granted Defendants' motion, dismissing Plaintiffs' breach of contract claims with prejudice and the remaining claims without prejudice. [53]. In large part, the Court dismissed Plaintiffs' claims because they were premised on Defendants' alleged breach of the CLA. In its opinion, this Court explained that under Illinois law Plaintiffs (1) could not bring a breach of contract claim to enforce a contract to which they were not a party and (2) could not use the ICFA to penalize Defendants' non-compliance with the CLA. [53]. Plaintiffs filed the TAC on July 23, 2025, and Defendants again moved to dismiss. [57, 59].

## II.    Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's

---

[2] Plaintiffs subsequently filed a second amended complaint [46] after voluntarily dismissing another Defendant, Atlas Arteria, from the case. The remaining Defendants did not file renewed motions to dismiss and instead rested on their briefing as to the first amended complaint.

3

favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### III.   Analysis

#### A. Overview

The TAC contains two counts. Count II[3] alleges that SCC violated the ICFA by engaging in unfair acts, and Count IV is a claim for unjust enrichment against both SCC and CCPI.

For the purposes of their motion to dismiss, SCC accepts (as it must) that it charged tolls beyond what the CLA authorized. Defendants nonetheless argue that

---

[3] The TAC numbers its counts consistent with the numeration in prior versions of the complaint.

Plaintiffs fail to state a claim as to both counts. For the reasons discussed below, the Court agrees.

### B. Count II – Unfair Practice under the ICFA

To state a claim under the ICFA, plaintiffs must allege (1) a deceptive or unfair act or promise by Defendants, (2) Defendants' intent that Plaintiffs rely on the deceptive or unfair act, (3) that the deceptive or unfair act occurred during a course of conduct involving trade or commerce, and (4) actual damage as a result of the deceptive or unfair act. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014). And to be unfair under the ICFA, an act must (1) violate "public policy," (2) be "immoral, unethical, oppressive or unscrupulous" so that the consumer "has little choice but to submit," or (3) cause legally cognizable "substantial injury to consumers" that they could not reasonably have avoided. *Horist v. Sudler & Co.*, 941 F.3d 274, 280 (7th Cir. 2019). A plaintiff need not establish all three; "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002). The Court addresses each.

### i. Public Policy

For purposes of an ICFA claim, Illinois courts have held that a practice can offend public policy if it violates some policy established by statute, common law, or is otherwise "within the penumbra of some established concept of unfairness." *Ekl v. Knecht*, 585 N.E.2d 156, 163 (Ill. App. Ct. 1991). Plaintiffs argue that SCC's tolls violate public policy as established in two statutes: the Illinois Toll Bridge Act

("ITBA"), 605 ILCS 115 *et seq.*, and the Illinois Public-Private Partnerships for Transportation Act ("IPPPTA"), 630 ILCS 5 *et seq.*

In relevant part, the ITBA prohibits taking "any greater rate of toll . . . than is allowed by law." 605 ILCS 115/9. But Plaintiffs have not identified any *law* that SCC allegedly broke in setting or taking tolls; rather, the thrust of Plaintiffs' complaint is that Defendants' toll rates violate the provisions of the *CLA*, a contract between Defendants and the City to which Plaintiffs are not a party. *See* TAC ¶ 5. Because Plaintiffs do not identify any law that might govern the at-issue tolls, Plaintiffs fail to allege a violation of a public policy premised on the ITBA.

Next, the IPPPTA provides that "[n]o tolls or user fees may be imposed by the contractor except as set forth in a public-private agreement." 630 ILCS 5/15(c). The status defines a "public-private agreement" to mean one that is between a contractor ". . . and the responsible public entity relating to . . . a transportation project that is entered into under this Act." 630 ILCS 5/10. Plaintiffs' argument is thus that the CLA is a "public-private agreement" and that Defendants cannot charge more for tolls than the CLA would allow.

But the IPPPTA on its face applies only to agreements entered into by "responsible public entit[ies]." 630 ILCS 5/10. It provides the following definition:

> "Responsible public entity" means the Department of Transportation, the Illinois State Toll Highway Authority, and the 5 most populous counties of Illinois, as of the most recent publicly available decennial census.

6

*Id.* Notably, Plaintiffs allege that the CLA is an agreement between Defendants and the *City*, *not* any county or other entity contemplated by the statute. *See* TAC ¶ 9. The City is thus not a "responsible public entity," as defined by the statute and as a result its contract with SCC is not in the ambit of agreements governed by the IPPPTA.

Plaintiffs appear to argue that even if the IPPPTA does not explicitly govern the CLA, the IPPPTA can nonetheless be used to establish a public policy against charging tolls beyond the rates contained in the CLA. [64] at 5. The Court does not agree. The CLA was executed in 2005, six years before the IPPPTA was signed into law. The General Assembly specifically identified the governmental entities with public-private partnerships they intended for the IPPPTA to cover, and they did not include the City. They further did not include a private right of action in the IPPPTA. In Illinois law, there is a "presumption that the legislature meant what it said." *People v. Craig*, 934 N.E.2d 657, 663 (Ill. App. Ct. 2010). Accepting Plaintiffs' argument would (1) imply the City into the statute's definition of "responsible public entity" after the General Assembly declined to do so, (2) allow Plaintiffs to enforce the IPPPTA after the General Assembly declined to include a private right of action in it, and (3) allow Plaintiff to enforce the terms of a contract to which they are not a party. This argument proves too much. Accordingly, the Court finds that Plaintiffs have failed to allege any conduct that violates a public policy for purposes of their ICFA claim.[4]

---

[4] Defendants also argue that because the City is a home rule unit of local government, state regulatory statutes like the ITBA and IPPPTA cannot govern any contracts that the City enters. *See* [60] at 10;

### ii. Immoral, Unethical, Oppressive, or Unscrupulous

"The relevant inquiry here is whether a defendant's conduct is so oppressive as to leave the consumer with little alternative except to submit to it." *Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 833 (7th Cir. 2014). Plaintiffs argue that they have little choice but to submit to Defendants' toll rates because drivers lack reasonable alternatives to the Skyway. *See* TAC ¶ 104. In support, Plaintiffs allege that (1) demand for the Skyway is price inelastic (meaning drivers will be hesitant to change routes even if the price of using the Skyway goes up), and (2) the alternative routes have higher traffic and take longer to navigate. *See* [64] at 10.

But those allegations relate only to the inherent nature of the Skyway relative to existing alternative routes and have nothing to do with Defendants' *conduct*. Taking Plaintiffs' allegations as true, the price inelasticity of the Skyway and relative lack of convenience other routes offer are always present regardless of whether SCC's toll rates comply with the CLA. The fact that drivers have a strong preference for the Skyway does not make it immoral or oppressive to charge drivers a toll that they are willing to pay.

Plaintiffs rely on *Kahn v. Walmart*, but that case cuts against Plaintiffs' argument. There, the Seventh Circuit considered whether Walmart had engaged in an unfair practice under the ICFA where Walmart's listed shelf prices understated the prices that Walmart actually charged once a customer got to the register. 107 F.4th 585, 603 (7th Cir. 2024). The Seventh Circuit held that it was, likening

---

[67] at 5-6 (citing Ill. Const. art. VII § 6(a)). Because the Court finds that Plaintiffs have not alleged any violation of a public policy, the Court declines to resolve this issue.

8

Walmart's alleged practice to a "bait and switch" and explaining that even if a consumer *did* spot a price discrepancy at checkout, they had "little choice but to submit" to the higher costs, because the "alternative is to spend more time and effort in comparison shopping and rectifying any overcharges." *Id*. at 602-03. The Seventh Circuit explained that this bait and switch creates "sunk costs [which] may create a situation in which customers are oppressed." *Id*. at 602. The problem in *Kahn* was not with the goods Walmart sought to sell or the prices it sought to charge for those goods; rather it was that Walmart prevented its customers from knowing the true price they would be forced to pay for their goods until they were at the checkout.

*Kahn* thus bears little to no resemblance to the facts before the Court. Plaintiffs do not allege that Defendants are hiding the true tolls that they charge drivers, nor that Defendants have engaged in any other conduct that gives Plaintiffs little choice but to submit to paying their publicly posted tolls. Drivers incur no sunk costs by choosing the drive on the Skyway; they incur only the publicly available costs that the Skyway advertises it will charge.

In short, "[t]here is nothing immoral, oppressive, unscrupulous or unethical about charging a consumer a price she is willing to pay." *Flores v. United Airlines*, 426 F. Supp. 3d 520, 531 (N.D. Ill. 2019).

And even more fundamentally, Plaintiffs' argument fails because the TAC reveals there *are* alternatives to the Skyway. TAC ¶ 110. Plaintiffs may not like those alternatives as much as the Skyway, but their preferences do not mean that no reasonable alternative exists. Accordingly, Plaintiffs have failed to allege any

9

immoral, unethical, oppressive, or unscrupulous conduct for purposes of stating an ICFA claim.

### iii. Substantial Injury

For similar reasons, Plaintiffs have not alleged that they suffered a substantial injury as a result of Defendants' practice. "A substantial injury for ICFA purposes is one that consumers could not have reasonably avoided." *Mullen v. GLV, Inc.*, 488 F. Supp. 3d 695, 712 (N.D. Ill. 2020), *aff'd*, 37 F.4th 1326 (7th Cir. 2022). As discussed, Plaintiffs could have reasonably avoided paying the Skyway's tolls by traveling on one of the alternative routes that the TAC references. Instead, they willingly paid the advertised toll rates, and they got what they bargained for. Plaintiffs have thus failed to allege any unfair conduct.

### iv. Plaintiffs' cited case law does not compel a different outcome.

Plaintiffs rely heavily on *Outzen v. Kapsch Trafficcom USA, Inc.* to argue that their ICFA claim can survive. There, a district court held that Outzen stated a claim for a violation of Indiana's consumer fraud claim (the "IDCSA") where the plaintiff alleged that Kapsch, which managed an interstate tolling system, improperly charged her an administrative fee. No. 120CV01286TWPMJD, 2021 WL 914021, at *1 (S.D. Ind. Mar. 10, 2021). As a part of its contract with multiple state governments, Kapsch was required to provide multiple sequential notices to drivers who owed unpaid tolls. *Id.* Each sequential notice carried with it additional financial penalties. *Id.* at *1-2. Outzen alleged that Kapsch only sent drivers with unpaid toll balances a second notice, but never a first, with the effect that drivers were charged unduly large

10

financial penalties. *Id*. The court held that Outzen stated a claim for *fraud* under the IDCSA because Outzen pled that Kapsch mispresented the amount that Outzen and other drivers owed. *Id*. at *11-12.

Plaintiffs' reliance on *Outzen* is misplaced. Because Outzen's claim was premised on fraud under the IDCSA, rather than an unfair act under the ICFA, the *Outzen* court did not consider whether (1) Kapsch's conduct violated a public policy or (2) whether the conduct was oppressive or otherwise unfair so as to leave Outzen with little choice to submit. *Outzen* thus says little about Plaintiffs' unfair practice claim.

Accordingly, Count II is dismissed.

### C. Count IV – Unjust Enrichment

Under Illinois law, "[u]njust enrichment is not an independent cause of action. Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law." *Flores v. Aon Corp.*, 242 N.E.3d 340, 356 (Ill. App. Ct. 2023). The Seventh Circuit has held that when "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Here, Plaintiffs allege that Defendants were unjustly enriched by the same conduct underlying Count II. Because that claim is dismissed, so too is Count IV.

Plaintiffs nonetheless argue that three independent bases exist to support their unjust enrichment claim. The three bases are (1) Defendants' alleged violation of the CLA, (2) Defendants' alleged violation of the ICFA, and (3) Defendants' alleged

11

violation of the ITBA. As to the latter two, Plaintiffs have not adequately alleged that Defendants *did* violate the ICFA or ITBA. As to the CLA, Plaintiffs' seek to in effect use unjust enrichment to give themselves the power to enforce a contract to which they are not parties. As the Court explained at length in its previous opinion, this would turn Illinois contract law on its head. [53] at 12.[5] Accordingly, Plaintiffs' unjust enrichment claim is dismissed.

## IV.    Dismissal with Prejudice

Courts have "broad discretion" to dismiss with prejudice "where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). Because Plaintiffs have failed on at least two occasions to state a claim for unjust enrichment or for violations of the ICFA, the Court believes that any proposed amendment would be futile. Accordingly, both counts are dismissed with prejudice.

## V.    Conclusion

For the stated reasons, Defendants' Motion to Dismiss [59] is granted and all counts are dismissed with prejudice. Civil case terminated. Judgment to enter.

---

[5] Plaintiffs also argue that they "have a better claim to the funds CCPI received from SCC." [64] at 15. But for the reasons discussed, Plaintiffs have not alleged facts suggesting they have *any* claim to any relevant funds.

12

E N T E R:

Dated: March 16, 2026

Mary M Rowland

13